## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JOHN WESLEY PATTON                                    CIVIL ACTION

VERSUS                                                        NO. 20-3408

CITY OF WESTWEGO, ET AL.                      SECTION: "B"(1)

### PARTIAL REPORT AND RECOMMENDATION

Plaintiff, John Wesley Patton, a state prisoner, filed the instant pro se complaint.[1]  In this lawsuit, he sued numerous defendants, alleging the existence of a vast governmental conspiracy to deprive him of his constitutional rights in various respects in connection with his arrest, prosecution, conviction, and imprisonment on state criminal charges.[2]

Although plaintiff initially requested that he be allowed to proceed in this matter as a pauper, his history of frivolous litigation had resulted in him accumulating "three strikes" under 28 U.S.C. § 1915(g).[3]  See Patton v. Jefferson Parish Correctional Center, 136 F.3d 458 (5th Cir.

---

[1] Rec. Doc. 1.

[2] Regarding those charges, the Louisiana Fifth Circuit Court of Appeal has explained:

> On November 30, 2018, Defendant was charged with attempted second degree rape (count one), in violation of La. R.S. 14:27 and La. R.S. 14:42.1; false imprisonment while armed with a dangerous weapon (count two), in violation of La. R.S. 14:46.1; second degree rape (count three), in violation of La. R.S. 14:42.1; and sexual battery (count four), in violation of La. R.S. 14:43.1. Defendant pleaded not guilty to the charged offenses.
> Trial commenced before a 12-person jury on April 12, 2021.  After eight days, the jury unanimously found Defendant guilty on all four counts.

State v. Patton, No. 21-KA-613, 2021 WL 5441600, at *1 (La. App. 5th Cir. Nov. 17, 2021).

[3] That statute provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

1998); see also Patton v. Toudouze, No. 97-50273, 1999 WL 499610 (5th Cir. June 15, 1999).  In light of that fact, and because he failed to show that his current claims concerned an imminent danger of serious physical injury as would be required to except him from the restrictions imposed by § 1915(g), he was denied leave to proceed as a pauper.[4]  He thereafter paid the full filing fee.

## I.  The Parties

The Court must first attempt identify the parties in this case.  Normally, that is a straightforward task.  Unfortunately, for reasons noted below, it is not so simple here.

Clearly, "[t]he plaintiff is the master of his complaint."  Freedom from Religion Foundation, Inc. v. Mack, 4 F.4th 306, 312 (5th Cir. 2021).  "This includes a plaintiff's decision as to which parties to sue." De Jongh v. State Farm Lloyds, 555 F. App'x 435, 438 (5th Cir. 2014).  Therefore, the Court must look to – and, in this case, attempt to decipher – plaintiff's complaint to determine the parties in this case.  Plaintiff listed those parties on pages 6-13 of his complaint.[5]

## A.  The Plaintiffs

Obviously, plaintiff himself is a party.[6]  But apparently not satisfied to bring only his own claims, he expressed a desire to pursue this matter as a class action and listed "all Jefferson Parish inmates … incarcerated September 2018 until present" and "Jefferson Parish citizens" as additional plaintiffs.[7]  However, plaintiff is proceeding pro se, and it is clear that pro se litigants should not be allowed to serve as class representatives.  As the United States Tenth Circuit Court of Appeals has noted:

> Under Rule 23(a)(4) [of the Federal Rules of Civil Procedure], a class representative must "fairly and adequately protect the interests of the class."  A

---

[4] Rec. Doc. 6.
[5] Rec. Doc. 1, pp. 6-13.
[6] Id. at p. 6.
[7] Id.

> litigant may bring his own claims to federal court without counsel, but not the claims of others.  This is so because the competence of a layman is clearly too limited to allow him to risk the rights of others.

Fymbo v. State Farm Fire & Casualty Co., 213 F.3d 1320, 1321 (10th Cir. 2000) (internal quotation marks and citations omitted); accord Powers v. Clay, C.A. No. V-11-051, 2011 WL 6130929, at *3 (S.D. Tex. Dec. 8, 2011); Wetzel v. Strain, Civ. Action No. 09-7633, 2009 WL 5064445, at *1 (E.D. La. Dec. 16, 2009); Luna v. Kliebert, Civ. Action No. 09-3853, 2009 WL 2175773, at *1 n.1 (E.D. La. Jul. 17, 2009), aff'd, 368 F. App'x 500 (5th Cir. 2010); Sosa v. Strain, Civ. Action No. 069040, 2007 WL 1521441, at *7 (E.D. La. May 22, 2007).  A pro se plaintiff's tenacity and zeal "are no substitute for the skill and experience which are needed to prosecute an action on behalf of a class."  MacKenzie v. Local 624, International Union of Operating Engineers, 472 F. Supp. 1025, 1033 (N.D. Miss. 1979); accord Luna, 2009 WL 2175773, at *1 n.1; Sosa, 2007 WL 1521441, at *7.  Therefore, plaintiff should not be allowed to pursue this matter as a class action. Accordingly, his request to prosecute this matter as a class action should be **DENIED**, and he should be considered the sole plaintiff in this case.

## B.  The Defendants

The more difficult task is identifying the defendants.  The difficulty arises from the confusing way plaintiff identified the defendants in the complaint.  Specifically, he listed nineteen defendants by number.  However, under those nineteen numbered defendants, he added the names of various individuals marked with an asterisk (and then indicated that an asterisk "denotes actual person to be served"[8]) and other names bearing no asterisks.  Plaintiff's list (omitting the various addresses he provided) read as follows:

---

[8] Id.

1.      City of Westwego

        *Joe Peoples, Mayor

2.      City of Kenner

        *Ben Zahn, Mayor

3.      Parish of Jefferson

        *Cynthia Lee-Sheng, Parish President

4.      Jefferson Parish Sheriff's Office

        *Joseph P. Lopinto, III, Sheriff of Jefferson
        *Lt. Jason Hippler

5.      Jefferson Parish District Attorney's Office

        *Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of
            Jefferson
        *Jennifer Z. Rosenbach, Assistant District Attorney
        *Laura S. Schneidau, Assistant District Attorney
        *Zach Popovitch, Assistant District Attorney
        *Melanie Villemarette

6.      Twenty-Fourth Judicial District Public Defender Office, Parish of Jefferson

        *Richard M. Tompson, District Defender
        *Price Quenin, I.D.B. Employee

7.      Westwego Police Department

        *Dwayne J. Munch, Jr., Chief of Police
        *Christopher Fisher, Detective
        *Cory Boudreaux, Detective
        *Lt. Eric Orlando
        *Sgt. Randy Mason
        *Officer Sam Norton
        *Officer Angel Lopez
        *Officer Blake Lawson
        *Officer Owen Valence
        *Officer Joshua Brown

8.      Kenner Police Department

        *Michael Glaser, Chief of Police
        *Lt. Michael Cunningham
        *Bryan S. Weiter, Detective
        *Sgt. Ruthie Brown
        *Officer Joseph Scamardo

9.      Jefferson Parish Correctional Center

        *Warden Sue Ellen Monfra
        *Capt. B. Bordelon, Asst. Dep. Administrator
        *Capt. Arron Wilkie (2nd shift)
        *Capt. W. Wallace (1st Shift)
        *Lt. Sean Henriques (Courts)

        Specialized Investigator Unit (S.I.U.)
        Clerk J.P.C.C. Law Library

        *Lt. Morris S.I.U. and Chris Rivers

        Correct Health Medical Department
        Correctional Medical and Dental Provider

        *Medical Director Dr. Charles Mary

        Securus Phone System Technologies
        Securus Visitation Systems

10.     Judiciary Commission of Louisiana

        *Sandra A. Vujnovich, Chief Executive Officer

        Office of Special Counsel

        *Michelle A. Beaty
        *John Keeling
        *David Becker

11.     Louisiana Attorney Disciplinary Board
        Office of the Disciplinary Counsel

        *Charles B. Plattsmier, Chief Disciplinary Counsel
        *Tammy Pruet Northrup, Deputy Disciplinary Counsel

    *Yolanda Cezar, Screening Counsel
    *Izzy Dillard, Staff Investigator

12.  Jefferson Parish Sheriff's Office
    Internal Management Bureau

    *William Boudreaux, J.P.S.O. Major, Commander I.M.B.

13.  Clerk of Court
    24th Judicial District Court

    *John A. Gegenheimer, Clerk of 24th Judicial

    Division "J" Clerks

    *Cherise Foret, Deputy Clerk

14.  Judicial Administrator
    24th Judicial District

    *Renee Hatch-Aguilar, Judicial Administrator

15.  Office of District Judges
    24th Judicial District

    *Honorable Stephen C. Grefer, Division "J" Judge

    Certified Court Reporters

    *Monique M. Casey, Division "E"
    *Rosa Manale, Division "J"
    *Shelley Sampey, Division "J"
    *Sean Hannan, Judicial Clerk Administrator

16.  New Orleans Family Justice Center

    *Cynthia Fisher, Employee

17.  John Courtney Wilson, Attorney at Law

18.  Martin E. Regan, Jr., Attorney at Law

19.  Network Strategist

*Keith Lobrano, Private Investigator

It is unclear how plaintiff intended for that list to be interpreted. Were only the numbered entities/individuals intended as defendants, with the names marked by an asterisk merely indicating agents for service? (Some defendants interpreted the list in that manner.) Or were **both** the numbered entities/individuals **and** the individuals marked with asterisks intended as defendants? (Some defendants interpreted the list in that manner.) And what of the entities which were assigned neither a number nor an asterisk?

The answers to those questions are not apparent; however, in any event, it must be noted that **only the numbered defendants were issued summonses and purportedly served**. Therefore, if plaintiff intended for the unnumbered individuals and entities (in other words, those bearing asterisks or neither a number nor an asterisk) to be separate defendants herein, he has a significant problem. Namely, it was his responsibility to "ensure that **each defendant** is served with a copy of both the summons and the complaint …." 1 James Wm. Moore, Moore's Federal Practice – Civil § 4.50[1] (3d ed. 2022) (emphasis added); see also id. § 4.50[3] ("If an action is commenced against more than one defendant, plaintiff must either serve one summons that lists each defendant or serve separate summonses on each defendant, each with one defendant's name. Regardless of which method is used, **each defendant in an action must receive a summons**." (emphasis added)); see also Trombetta v. Novocin, No. 18-CV-993, 2020 WL 7053301, at *2 (S.D.N.Y. Nov. 24, 2020) ("A separate summons must be issued for each individual defendant. Fed R. Civ. P. 4(b). The plaintiff must serve each defendant in a manner consistent with the requirements of Rule 4(e) (if the defendant is an individual within the United States) or Rule 4(h) (if the defendant is a domestic corporation). Fed. R. Civ. P. 4(b-c). If the plaintiff fails to serve a

defendant within 90 days of filing the complaint, the action must be dismissed without prejudice unless the plaintiff shows 'good cause.' Fed. R. Civ. P. 4(m)."). Plaintiff has not fulfilled that responsibility.

Clearly, service has presented a challenge for plaintiff in this proceeding. Having paid the filing fee, he was responsible for serving the summons and complaint upon the defendants. Fed. R. Civ. P. 4(c)(1). However, as of June 22, 2021, no returns of service had been filed into record, and so the undersigned entered an Order stating:

> **IT IS ORDERED** that, on or before July 16, 2021, plaintiff file proof into the record that he has effected service upon the defendants in this lawsuit or show good cause for his failure to effect service. If plaintiff fails to comply with this Order, the undersigned will issue a report recommending that this lawsuit be dismissed without prejudice. However, if plaintiff properly serves the defendants by that deadline[FN] and files proof of such service in the record, the Court will consider his complaint in due course.
>
> > [FN] "Any person who is at least 18 years old and not a party may serve a summons and complaint." Fed. R. Civ. P. 4(c)(2).[9]

But because plaintiff had changed facilities without promptly notifying the Court of that change, the foregoing Order was returned by the postal service as undeliverable.[10]

However, once plaintiff resurfaced and notified the Court of his new address,[11] a new Order was issued and his service deadline was extended to September 3, 2021.[12] At his request, that deadline was then again extended to December 17, 2021,[13] and then again to March 18, 2022.[14] After retaining the services of a process server, plaintiff requested that summonses be reissued and

---

[9] Rec. Doc. 7.
[10] Rec. Doc. 8.
[11] Rec. Doc. 9.
[12] Rec. Doc. 10.
[13] Rec. Doc. 17.
[14] Rec. Doc. 35.

forwarded to the process server on his behalf.[15]  The Court granted that motion and directed the Clerk of Court to reissue the summonses.[16]

The Clerk of Court then reissued summonses for the **nineteen numbered** defendants, reasonably interpreting the foregoing ambiguous list of defendants in plaintiff's complaint as suing only those entities/individuals.[17]  If that was a misinterpretation on the part of the Clerk of Court, plaintiff never made any effort to correct it by requesting that additional summonses be issued.  As a result, only those returns were eventually filed into the record,[18] meaning he has attempted to serve[19] only the nineteen numbered defendants.  **So, to reiterate:  the unnumbered individuals and entities (those bearing asterisks or neither a number nor an asterisk) have never been served, in contravention of the Court's repeated orders directing plaintiff that he must serve the defendants.**

Nevertheless, a number of motions to dismiss have now been filed, some purportedly on behalf of even the "asterisked" individuals who were never individually served.  The pending motions to dismiss were filed by (1) the Jefferson Parish District Attorney's Office, District Attorney Paul D. Connick, Jr., Assistant District Attorneys Jennifer Rosenbach, Laura Schneidau, and Zachary Popovich, and Victims Assistance Program Coordinator Melanie Villemarette,[20] (2) the Louisiana Judiciary Commission, the Louisiana Attorney Disciplinary Board, the Louisiana Office of Disciplinary Counsel, and the "Office of District Judges" of the Louisiana Twenty-

---

[15] Rec. Doc. 39.
[16] Rec. Doc. 41.
[17] Rec. Doc. 42.
[18] See Rec. Docs. 48, 49, 50, 62, 63, and 64.
[19] The Court says "attempted" because it is not clear that service was effected on all of those defendants in a proper manner.
[20] Rec. Doc. 18.

Fourth Judicial District Court,[21] (3) the City of Kenner and Mayor Ben Zahn,[22] (4) the Kenner Police Department, Chief Michael Glaser, Lieutenant Michael Cunningham, Detective Bryan S. Weiter, and Officer Joseph Scamardo,[23] (5) former Westwego Mayor Joe Peoples, the City of Westwego, the Westwego Police Department, Chief of Police Donald J. Munch, Sr., and Officers Christopher Fisher, Cory Boudreaux, Eric Orlando, Randy Mason, Sam Norton, Angel Lopez, Blake Lawson, Owen Valence, and Joshua Brown,[24] (6) John Courtney Wilson,[25] (7) Louisiana Twenty-Fourth Judicial District Court Judicial Administrator Renee Hatch Aguilar,[26] (8) the Parish of Jefferson,[27] and (9) Louisiana Twenty-Fourth Judicial District Defender Richard M. Tompson.[28]  Plaintiff filed responses in opposition to most, but not all, of those motions,[29] a number of those defendants filed replies,[30] and plaintiff filed a surresponse.[31]  In addition, a motion to dismiss was recently filed by Jon A. Gegenheimer and Cherise Foret,[32] but that motion is not yet under submission.

However, before turning its attention to those various pending motions to dismiss, the Court will first cover preliminary matters which are common to all or many of the motions.  This is being done to obviate the need to retread the same ground repeatedly in detail each time they are relevant to the individual motions addressed herein.

---

[21] Rec. Doc. 20.
[22] Rec. Doc. 22.
[23] Rec. Doc. 23.
[24] Rec. Doc. 36.
[25] Rec. Doc. 60.
[26] Rec. Doc. 71.
[27] Rec. Doc. 72.
[28] Rec. Doc. 86.
[29] Rec. Docs. 81 and 111.
[30] Rec. Docs. 85, 96, 97, 98, 101, 108, 116, and 120.
[31] Rec. Doc. 110.
[32] Rec. Doc. 102.

## II.  Causes of Action

As noted, plaintiff has claimed in this lawsuit that he was the victim of a vast governmental conspiracy which resulted in his arrest and subsequent prosecution on a variety of criminal offenses.  He indicated that he was asserting his claims pursuant to 42 U.S.C. §§ 1983 and 1985 and 31 U.S.C. §§ 3729-3733.  The Court can fairly quickly dispose of all but the § 1983 claims.

### A.  42 U.S.C. § 1985 Claims

Regarding claims brought pursuant to 42 U.S.C. § 1985, the United States Fifth Circuit Court of Appeals has explained:

> 42 U.S.C. § 1985 accords a cause of action to any person injured as a result of a conspiracy to interfere with the civil rights described in the Act:  Subsection 1 relates to a conspiracy to prevent a public official from performing his duty; Subsection 2 relates to a conspiracy to obstruct justice or to intimidate a party, a witness, or a juror; and Subsection 3 concerns the acts of two or more persons in conspiring to, or in going in disguise to, deprive any person of certain rights.

Holdiness v. Stroud, 808 F.2d 417, 424 (5th Cir. 1987).  Regarding Subsection 2, that subsection has two parts.  "The first part of § 1985(2) proscribes conspiracies that interfere with the administration of justice in **federal** court, and the second part proscribes conspiracies that interfere with the administration of justice in **state** court."  Daigle v. Gulf State Utilities Co., Local Union Number 2286, 794 F.2d 974, 979 (5th Cir. 1986) (emphasis added; footnote omitted); accord Manax v. McNamara, 660 F. Supp. 657, 665 (W.D. Tex. 1987), aff'd, 842 F.2d 808 (5th Cir. 1988).

Because plaintiff is not a public official, § 1985(1) is clearly inapplicable here.  Further, because he is not alleging interference in federal court proceedings, the first part of § 1985(2) is likewise inapplicable.  Therefore, presumably, plaintiff intended to invoke the second part of § 1985(2) and/or § 1985(3).  However, those provisions require allegations of both (1) a conspiracy

"to deprive equal protection" and (2) class-based animus.  Daigle, 794 F.2d at 979; accord Williams v. City of Irving, Civ. Action No. 3:15-CV-1701, 2018 WL 4145052, at *7 (N.D. Tex. Aug. 30, 2018); Staten v. City of D'Iberville, No. 1:13CV212, 2014 WL 4273249, at *5-6 (S.D. Miss. Aug. 28, 2014); Moffett v. Bryant, Civ. Action No. 08-CV-1337, 2009 WL 2448146, at *6 (W.D. La. Aug. 6, 2009); Batt v. Taylor, Civ. Action No. 3:06-CV-519, 2008 WL 879589, at *2-3 (S.D. Miss. Mar. 30, 2008); Manax, 660 F. Supp. at 665.  Plaintiff has not adequately alleged either.

As an initial matter, it must be noted that plaintiff's allegations that the defendants conspired together are purely conclusory, unsupported by any actual facts whatsoever indicative of the existence of a conspiracy.  That is insufficient.  See, e.g., Favors v. Office of Risk Management, Civ. Action No. 14-1786, 2015 WL 2354184, at *4 n.45 (E.D. La. May 15, 2015) ("Plaintiff has made conclusory statements but fails to allege facts from which the Court could infer that the Defendants were engaged in a conspiracy ….  As such, Plaintiff has failed to state a 42 U.S.C. § 1985(2) or (3) claim."); Mays v. Board of Commissioners Port of New Orleans, Civ. Action No. 14-1014, 2015 WL 1245683, at *9 (E.D. La. Mar. 18, 2015) ("[T]he operative facts of an alleged conspiracy under § 1985(3) must be pled with specificity …."); Hope Medical Group for Women v. LeBlanc, Civ. Action No. 06-9176, 2007 WL 9812848, at *5 (E.D. La. May 18, 2007) ("When attempting to plead a conspiracy claim under 1985(2), the plaintiffs must plead the operative facts upon which their claim is based.  Mere conclusory allegations are insufficient." (quotation marks omitted)).

Second, in any event, plaintiff has not alleged that the purported conspiracy was motivated by a **class-based** animus – or, for that matter, even identified the supposed class in question.

12

Accordingly, because plaintiff has not met even the most fundamental pleading requirements to assert § 1985 claims, those claims need not be further discussed herein and should simply be dismissed as to all defendants pursuant to the Court's statutory screening authority provided in 28 U.S.C. § 1915A.[33]

## B.  31 U.S.C. §§ 3729-3733

Claims brought under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, seek to impose liability on those who have defrauded the government with false or fraudulent claims for payment or approval.  U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899 (5th Cir. 1997); U.S. ex rel. McNeil v. Jolly, 451 F. Supp. 3d 657, 666 (E.D. La. 2020).  Under the FCA's qui tam provisions, a private citizen, or "relator" in FCA parlance, with special knowledge of fraud against the government may bring an action against a defrauder in the name of the United States.  United States v. U.S. ex rel. Thornton, 207 F.3d 769, 771 (5th Cir. 2000); McNeil, 451 F. Supp. 3d at 666.

However, a pro se litigant, such as plaintiff, may **not** prosecute a False Claims Act suit. See U.S. ex rel. Brooks v. Ormsby, 869 F.3d 356, 357 (5th Cir. 2017) ("[R]egardless of the right

---

[33] That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  Regarding such lawsuits, the statute provides:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).  The statute applies to lawsuits filed by all prisoners, including those, such as plaintiff, who pay the filing fee.  Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998); see also Velasquez v. Dretke, 185 F. App'x 342, 343 (5th Cir. 2006).

of anyone to represent himself *pro se*, he is not representing himself when he brings an action

solely as relator for another non-intervening party, including the United States, and therefore

cannot do so *pro se*."); Manning v. Pogo Producing Company, Civ. Action No. H-08-2896, 2008

WL 4889032, at *1 (S.D. Tex. Nov. 12, 2008).  Accordingly, for that reason, plaintiff's FCA

claims should likewise be dismissed as to all defendants pursuant to the Court's statutory screening

authority provided in 28 U.S.C. § 1915A, and so those claims will not be further discussed herein.

### C.  42 U.S.C. § 1983

Lastly, plaintiff indicated that he was also asserting claims under 42 U.S.C. § 1983.  In

pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the

violation of a right secured by the Constitution and laws of the United States, and must show that

the alleged deprivation was committed by a person acting under color of state law."  West v.

Atkins, 487 U.S. 42, 48 (1988).

Unlike his claims asserted under the other statutes discussed herein, plaintiff's § 1983

claims require closer examination.  However, due to the sheer numerosity of the individuals and

entities plaintiff has sued, many of the defendants invoke the same defenses.  Therefore, before

turning to the individual motions, the Court will summarize several general principles concerning those common defenses.

## 1. Immunities

### a. Eleventh Amendment

The Eleventh Amendment to the United States Constitution provides:  "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."  U.S. Const. amend. XI.  Despite the wording of that amendment, the United States Supreme Court has held:  "For over a century, however, we have recognized that the States' sovereign immunity is not limited to the literal terms of the Eleventh Amendment.  Although the text of the Amendment refers only to suits against a State by citizens of **another** State, we have repeatedly held that an unconsenting State also is immune from suits by its **own** citizens." Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 446 (2004) (emphasis added; citation omitted).  Further, the United States Fifth Circuit Court of Appeals has explained:

> The Eleventh Amendment bars a state's citizens from filing suit against the state **or its agencies** in federal courts.  Williams v. Dallas Area Rapid Transit, 242 F.3d 315, 318 (5th Cir. 2001).  **When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity.**  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).  By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal courts.  See LA.REV.STAT. ANN. § 13:5106(A).
>
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by "unequivocally" expressing its intent to do so and by acting "pursuant to a valid exercise of power."  Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank, 527 U.S. 627, 634, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999).  We note that in enacting § 1983, Congress did "not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States."  Quern v. Jordan, 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280-81 (5th Cir. 2002)

(emphasis added).

### b.  Judicial Immunity

Absolute judicial immunity protects judges from claims asserted against them based on

their judicial actions.  As was thoroughly explained by former United States Magistrate Judge

Joseph C. Wilkinson in a Report and Recommendation subsequently adopted by United States

District Judge Lance M. Africk:

> For more than one hundred years, judges have been held immune from liability for
> judicial acts done within their jurisdiction.  Stump v. Sparkman, 435 U.S. 349, 356,
> 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citing Bradley v. Fisher, 13 Wall. 335, 80
> U.S. 335, 20 L.Ed. 646 (1871)); Mays v. Sudderth, 97 F.3d 107, 110 (5th Cir. 1996).
> "A judge, of whatever status in the judicial hierarchy, is immune from suit for
> damages resulting from any acts performed in [his or her] judicial role."  Ammons
> v. Baldwin, 705 F.2d 1445, 1447 (5th Cir. 1983) (citations omitted); accord Mays,
> 97 F.3d at 110-11.  This judicial immunity applies even if a judge is accused of
> acting maliciously or corruptly.  Stump, 435 U.S. at 356-57; Pierson v. Ray, 386
> U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), overruled in part on other
> grounds by Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396
> (1982), as recognized by Hill v. Shelander, 992 F.2d 714, 716 (7th Cir. 1993);
> Mays, 97 F.3d at 110-11.  Judicial officers are absolutely immune from liability for
> damages unless they are without jurisdiction.  Id. at 111; Dayse v. Schuldt, 894
> F.2d 170, 172 (5th Cir. 1990); Freeze v. Griffith, 849 F.2d 172, 175 (5th Cir. 1988).
>
> In the past, however, judicial officers did not enjoy absolute immunity from
> suits seeking injunctive relief.  Relief of that nature was available under Section
> 1983 against state court judges acting in their judicial capacity.  Pulliam v. Allen,
> 466 U.S. 522, 541-42, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).  However, the
> Federal Courts Improvement Act of 1996 ("FCIA") amended Section 1983 to
> provide that "in any action brought against a judicial officer for an act or omission
> taken in such officer's judicial capacity, injunctive relief shall not be granted unless
> a declaratory decree was violated or declaratory relief is unavailable."  42 U.S.C. §
> 1983.
>
> The FCIA therefore statutorily overruled Pulliam's holding regarding the
> availability of injunctive relief against a state judge in his official capacity.  Guerin
> v. Higgins, No. 00-0244, 2001 WL 363486, at *1 (2d Cir. 2001) (unpublished);
> Nollet v. Justices, 83 F.Supp.2d 204, 210 (D. Mass. 2000); see also Bolin v. Story,
> 225 F.3d 1234, 1242 (11th Cir. 2000) (1996 amendment to Section 1983 limits the

relief available against a federal judge to declaratory relief). Thus, neither injunctive relief nor damages are available in this Section 1983 action against [a state judicial officer]. Tesmer v. Granholm, 114 F.Supp.2d 603, 618 (E.D. Mich. 2000); Nollet, 83 F.Supp.2d at 210.

Furthermore, to whatever extent, if any, that [a plaintiff] seeks an order … directing the judge to take action concerning [the] plaintiff's state court proceedings, a federal court has no power to direct a state court or its judicial officers in the performance of their duties when mandamus is the only relief sought. In re Campbell, 264 F.3d 730, 731 (7th Cir. 2001); Santee v. Quinlan, C.A. No. 96-3417, Record Doc. Nos. 3, 7, 8 (Nov. 5 & 27, 1996) (Duval, J.), aff'd, 115 F.3d 355, 356-57 (5th Cir. 1997); Russell v. Knight, 488 F.2d 96, 97 (5th Cir. 1973); Moye v. Clerk, 474 F.2d 1275, 1276 (5th Cir. 1973); Lamar v. 118th Judicial Dist. Court, 440 F.2d 383, 384 (5th Cir. 1971); White v. Stricklin, No. 3:02-CV-688-D, 2002 WL 1125747, at *2 (N.D. Tex. May 23, 2002); Norman v. Louisiana S.Ct., No. 01-2225, 2001 WL 881298, at *1 (E.D. La. Aug. 3, 2001) (Duval, J.). [A federal] court is without authority to order officials of the state court having jurisdiction over [a] plaintiff's criminal case to treat his claims in any particular way or to otherwise interfere with the rulings of its judges.

Hood v. Commissioner Foil, Civ. Action No. 15-5853, 2013 WL 6174614, at *3 (E.D. La. Nov. 21, 2013); accord Gemelli v. Louisiana, Civ. Action No. 19-13424, 2020 WL 3317033, at *6-7 (E.D. La. Apr. 29, 2020), adopted, 2020 WL 3297078 (E.D. La. June 18, 2020), appeal dismissed, No. 20-30426, 2021 WL 7953176 (5th Cir. Oct. 13, 2021).

### c. Prosecutorial Immunity

Similarly, absolute prosecutorial immunity protects prosecutors against claims based on actions they have taken as the state's advocates in criminal court. As the United States Fifth Circuit Court of Appeals has explained:

A prosecutor is absolutely immune for initiating and pursuing a criminal prosecution, for actions taken in [his] role as advocate for the state in the courts, or when [his] conduct is intimately associated with the judicial phase of the criminal process. …
… Our decisions applying those of the Supreme Court make clear that prosecutors enjoy absolute immunity for acts taken to initiate prosecution, and that this absolute immunity shelters prosecutors even when they act maliciously, wantonly or negligently.

Loupe v. O'Bannon, 824 F.3d 534, 539 (5th Cir. 2016) (citations, quotation marks, and brackets omitted).

### d. Qualified Immunity

Some defendants not protected by absolute immunity are nevertheless still protected by qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." Cope v. Cogdill, 3 F.4th 198, 204 (5th Cir. 2021) (quotation marks omitted). In reality, however, "[a]s the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

When a defendant asserts qualified immunity in a motion to dismiss, "[t]he crucial question is whether the complaint pleads facts that, if true, would permit the inference that [the defendant is] liable under § 1983 and would overcome [his] qualified immunity defense. It is the plaintiff's burden to demonstrate that qualified immunity is inappropriate." Terwilliger v. Reyna, 4 F.4th 270, 280 (5th Cir. 2021) (citation, quotation marks, and ellipsis omitted). Specifically:

> When a defendant invokes qualified immunity, the burden shifts to the plaintiff to plead specific facts to overcome the defense. To discharge this burden, plaintiffs must successfully allege that the defendants violated a statutory or constitutional right, and that the right was "clearly established" at the time of the challenged conduct. To be "clearly established" for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

Id. at 284 (citations, quotation marks, and brackets omitted).

## 2.  Other General Principles

In addition, certain other general principles are also repeatedly applicable herein. Therefore, again, to avoid unnecessary repetition, those general principles will be summarized at this point before the Court turns to the various motions to dismiss.

### a.  Municipal/Local Government Liability

Although municipal and local governments do not enjoy immunity under the Eleventh Amendment, their potential liability is still circumscribed in another significant respect:  they can be held liable in federal civil rights cases only when the alleged constitutional violation resulted from their governmental **policies** and **customs**.  The United States Supreme Court has explained:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).  Therefore, the United States Fifth Circuit Court of Appeals has held:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted.  To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom.  **The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.**

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (emphasis added; citations, quotation marks, and brackets omitted).  Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."  Colle v.

Brazos County, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 F. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 F. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3.

### b. Official-Capacity Claims

Government officials may be sued in their official capacities. However, "[o]fficial capacity suits generally represent another way of pleading an action **against an entity of which an officer is an agent**." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999) (emphasis added); accord Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." (citation omitted)); Spikes v. Phelps, 131 F. App'x 47, 48 (5th Cir. 2005) ("The liability, if any, flowing from a federal civil rights suit based on official capacity, runs against the local government entity, not the individual defendant."). Therefore, if an official of a municipality or local governmental entity is sued in his official capacity, then the actual defendant is the municipality or local governmental entity he serves, and so the previously discussed pleading requirements apply to such claims.

Moreover, if a plaintiff sues **both** the municipality or local governmental entity **and** an agent of that same entity in his official-capacity claim, then the official-capacity claim is duplicative and subject to dismissal on that basis. See, e.g., Garza v. Escobar, 972 F.3d 721, 734

(5th Cir. 2020); Castro Romero v. Becken, 256 F.3d 349, 355 (5th Cir. 2001); Wilkerson v. Parish

of Jefferson, Civ. Action No. 20-3031, 2021 WL 2436355, at *5 (E.D. La. June 14, 2021).

### c. Individual-Capacity Claims

Government officials may also be sued in their individual (or personal) capacities. But

such individual-capacity claims are restricted in one significant sense: the individual sued must

have been **personally involved** in the purported constitutional violation. See Thompson v. Steele,

709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights

cause of action."). Therefore, there is no vicarious liability under § 1983. As a result, an

individual-capacity claim against a supervisory official fails absent well-pled allegations of his

personal involvement or some other form of causation to connect him to a violation purportedly

committed by his subordinate. Marks v. Hudson, 933 F.3d 481, 490 (5th Cir. 2019); accord

Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) ("In a § 1983 suit ... – where masters do not answer

for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious

liability, each Government official, his or her title notwithstanding, is only liable for his or her own

misconduct."); Sanchez v. Young County, 866 F.3d 274, 281 (5th Cir. 2017) ("Supervisors cannot

be held liable for constitutional violations … if they had no personal involvement."); Thompkins

v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable

for the actions of subordinates on any theory of vicarious liability.").

Moreover, individual-capacity claims require factual specificity. "Plaintiffs suing

governmental officials in their individual capacities ... must allege **specific conduct** giving rise to

a constitutional violation. **This standard requires more than conclusional assertions**: The

21

plaintiff must allege **specific facts** giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (emphasis added; citation omitted).

### III.  Pending Motions to Dismiss

With those general principles in mind, the Court will now turn its attention to the pending motions to dismiss.  In those motions, the defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) and/or (6).[34]

Pursuant to Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Association of Mississippi, Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998) (quotation marks omitted).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof

---

[34] Several of the motions also argue that dismissal is warranted pursuant to Rule 12(b)(5), a defense which challenges the legal sufficiency of the service of process.  Here, however, the undersigned declines to recommend dismissal under Rule 12(b)(5), in light of the fact that plaintiff is a pro se litigant.  As one court has observed:

> Although a plaintiff's *pro se* status is not a license to ignore the Federal Rules of Civil Procedure, *pro se* litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process.  Consistent with that principle, courts often decline to dismiss a *pro se* plaintiff's case for defective service without first affording the plaintiff the opportunity to correct any errors he or she may have made.

Johnson-Richardson v. University of Phoenix, 334 F.R.D. 349, 357 (D.D.C. 2020) (citations, quotation marks, and ellipsis omitted); accord Lee v. Deutsche Bank National Trust Co., Civ. Action No. 18-2887, 2019 WL 1057015, at *3 (E.D. La. Mar. 6, 2019) (allowing an addition opportunity to effect proper service in light of "the Fifth Circuit's policy of leniency towards *pro se* plaintiffs").

Accordingly, even if a Rule 12(b)(5) dismissal would be otherwise appropriate, the undersigned would first allow plaintiff an opportunity to correct any service defects before recommending dismissal of his lawsuit pursuant to Rule 12(b)(5).  However, that is unnecessary with respect to the pending motions, because the motions alternatively seek dismissal under Rule 12(b)(1) and/or Rule 12(b)(6).  Because the arguments regarding those alternative grounds for dismissal have merit, it is more expedient simply to recommend dismissal on those grounds.  See Perez v. Miller, Civ. Action No. 21-0048, 2022 WL 557491, at *4 (E.D. La. Feb. 1, 2022) (noting that an attempt to remedy service "would only delay the inevitable" because, even if proper service were to be effected, the claims would still subject to dismissal on the alternative grounds identified in the motion), adopted, 2022 WL 539287 (E.D. La. Feb. 23, 2022).

that jurisdiction does in fact exist." <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

Rule 12(b)(6) allows a defendant to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on such a motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." <u>*In re*</u> <u>Katrina Canal Breaches Litigation</u>, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). However, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Mindful of the foregoing standards, the Court will now address each of the motions to dismiss in turn.

### A.  Motion to Dismiss Filed by the Jefferson Parish District Attorney's Office, District Attorney Paul D. Connick, Jr., Assistant District Attorneys Jennifer Rosenbach, Laura Schneidau, and Zachary Popovich, and Victims Assistance Program Coordinator Melanie Villemarette

In this motion, the defendants argue that dismissal is appropriate because (1) the Jefferson Parish District Attorney's Office is not a suable entity and (2) the individuals named are entitled to immunity, either absolute or qualified.  Plaintiff was ordered to respond to the motion.[35]  Later, on February 9, 2022, his request to file a consolidated response and opposition to all of the outstanding motions was granted; however, he was expressly warned that he "must separately address each motion to dismiss (and each defense asserted therein) in that single consolidated response and opposition.  Any motion or defense not separately addressed will be deemed unopposed."[36]  He thereafter filed his consolidated response and opposition,[37] but he failed to include therein any opposition to – or even any mention of – this motion to dismiss.  Therefore, it is deemed unopposed.  Moreover, in any event, the Court notes that the motion is meritorious for the following reasons.

To the extent that plaintiff is attempting to sue the Jefferson Parish District Attorney's Office itself, that is improper because "Louisiana law does not permit a district attorney's office to be sued in its own name."  Hudson v. City of New Orleans, 174 F.3d 677, 680 (5th Cir. 1999); see also Alexander v. City Police of Lafayette, Case No. 6:11-CV-01749, 2019 WL 2345083, at *6 (W.D. La. Feb. 27, 2019) (noting that a parish district attorney's office is not "a juridical entity

---

[35] Rec. Doc. 19.
[36] Rec. Doc. 69 (emphasis omitted).
[37] Rec. Doc. 81.

with the capacity to be sued"), adopted, 2019 WL 2334196 (W.D. La. May 29, 2019), appeal

dismissed, No. 19-30513, 2019 WL 13131386 (5th Cir. July 15, 2019); accord Spikes v. O'Berry,

Civ. Action No. 14-2968, 2015 WL 1758053, at *4 (E.D. La. Apr. 17, 2015) (same).

Of course, while a district attorney's office may not be sued, a claim may "be brought

against the district attorney in his official capacity." Hudson, 174 F.3d at 680. However, to the

extent that such an official-capacity claim is being asserted against District Attorney Connick in

this lawsuit,[38] plaintiff's allegations fall short of what is required to state a claim.

The United States Fifth Circuit Court of Appeals has noted:

> For purposes of "official capacity" suits under § 1983, the district attorney's
> office resembles other local government entities. Therefore, we advert to the
> Supreme Court's development of principles for determining whether a municipality
> or other local government entity should be held liable under 42 U.S.C. § 1983 for
> the constitutional tort of its employee.

Burge v. Parish of St. Tammany, 187 F.3d 452, 470 (5th Cir. 1999). As explained *supra*, those

principles require that a plaintiff allege that an official policy or custom was a "cause in fact" of

the deprivation of his rights and identify that official policy or custom. In the instant case, plaintiff

does not allege that his constitutional rights were violated as a result of an official policy or custom

promulgated or adopted by Connick, much less identify such a policy or custom. Accordingly, no

proper official-capacity claim has been alleged against Connick.

In light of the foregoing, all that would be left would be claims against these defendants in

their individual capacities. However, as also explained *supra*, for a valid individual-capacity claim

---

[38] Only Connick would be a proper defendant with respect to an official-capacity claim because, as the District Attorney, he "is the independent and final official policymaker for all of the administrative and prosecutorial functions of his office." Burge v. Parish of St. Tammany, 187 F.3d 452, 469 (5th Cir. 1999). Rosenbach, Schneidau, Popovich, and Villemarette are not policymakers for the Jefferson Parish District Attorney's Office. Therefore, they are not proper defendants with respect to an official-capacity claim, and so any official-capacity claims against them fail on that basis. See Truvia v. Julien, 187 F. App'x 346, 350 (5th Cir. 2006).

against a governmental official, a plaintiff must allege **specific facts** concerning the particular acts the defendant **personally** took or failed to take which gave rise to the purported constitutional violation.  Here, plaintiff has not alleged any specific facts whatsoever regarding the personal actions (or inactions) of these individuals; rather, he merely alleges, in wholly conclusory fashion, that they were parties to various categories of legal violations.  That is not allowed:  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations, quotation marks, and brackets omitted).  "While legal conclusions can provide the framework of a complaint, **they must be supported by factual allegations**."  Id. at 679 (emphasis added).

Further, in any event, the defendants are protected by their immunity.  For example, even if the District Attorney and Assistant District Attorneys were personally involved in plaintiff's prosecution, which has not even been alleged, they are, as explained *supra*, entitled to absolute prosecutorial immunity for their actions taken in that prosecution.

Of course, whether the same would be true of Victims Assistance Program Coordinator Melanie Villemarette is unclear, because plaintiff does not specify the nature of her role or even make any specific factual allegations whatsoever against her.  Nevertheless, even if she played some non-prosecutorial role and so would not be protected by absolute prosecutorial immunity, she has alternatively invoked qualified immunity.

As explained *supra*, once Villemarette invoked qualified immunity, plaintiff was required to demonstrate that qualified immunity is inappropriate by alleging that Villemarette violated a statutory or constitutional right and by showing that the right was "clearly established" at the time

of the challenged conduct.  Here, the Court can easily dispose of the claims against Villemarette

on the "clearly established" prong of the qualified immunity analysis.

Regarding that prong, the United States Fifth Circuit Court of Appeals has explained:

> We are bound by the restrictive analysis of "clearly established" set forth in numerous Supreme Court precedents.  A right is "clearly established" if it is "one that is sufficiently clear that every reasonable official would have understood that what [she] is doing violates that right."  Mullenix v. Luna, 577 U.S. 7, 11, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks and citation omitted).  Courts must not "define clearly established law at a high level of generality"; instead, their "inquiry must be undertaken in light of the specific context of the case."  Id. at 12, 136 S.Ct. 305 (internal quotation marks and citations omitted).  Therefore, unless existing precedent "squarely governs" the conduct at issue, an official will be entitled to qualified immunity.  See Brosseau v. Haugen, 543 U.S. 194, 201, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam); Mullenix, 577 U.S. at 12, 136 S.Ct. 305 (emphasizing that "[t]he dispositive question is whether the violative nature of particular conduct is clearly established" (internal quotation marks and citation omitted)).
>
> Generally, **to satisfy this standard, the plaintiff must "identify[ ] a case in which an officer acting under similar circumstances was held to have violated the [Constitution], and ... explain[ ] why the case clearly proscribed the conduct of that individual officer."**  Joseph ex rel. Estate of Joseph v. Bartlett, 981 F.3d 319, 345 (5th Cir. 2020) (concluding the defendants were entitled to qualified immunity because the plaintiffs failed to identify an analogous case).  While an exact case on point is not required, the confines of the officers' violation must be "beyond debate."  Baldwin v. Dorsey, 964 F.3d 320, 326 (5th Cir. 2020) (internal quotation marks and citation omitted), cert. denied, —— U.S. ——, 141 S. Ct. 1379, 209 L.Ed.2d 123 (2021) (mem.).  **Broad general propositions are not enough to overcome qualified immunity.**  Id.

Cope v. Cogdill, 3 F.4th 198, 204-05 (5th Cir. 2021) (emphasis added).

On the "clearly established" prong of the qualified immunity analysis, "[t]he critical

consideration is 'fair warning':  the specific right must have been defined with sufficient clarity to

enable a reasonable official to assess the lawfulness of [her] conduct."  Trevino v. Hinz, 751 F.

App'x 551, 554 (5th Cir. 2018) (quotation marks omitted).  In other words, "[a] clearly established

right is one that is sufficiently clear that every reasonable official would have understood that **what**

**[she] is doing** violates that right." <u>Mullenix v. Luna</u>, 577 U.S. 7, 11 (2015) (emphasis added; quotation marks omitted).

Here, again, plaintiff has not identified precisely **what Villemarette personally did** which he believes violated his rights. Therefore, obviously, he has not identified a case or body of case law finding that such actions (whatever they were) have been held to be unconstitutional in similar circumstances. Accordingly, Villemarette is entitled to qualified immunity.

**B. Motion to Dismiss Filed by the Louisiana Judiciary Commission,**

**the Louisiana Attorney Disciplinary Board, the Louisiana Office of Disciplinary Counsel,**

**and the "Office of District Judges" of the Louisiana Twenty-Fourth Judicial District Court**

In this motion, these defendants argue that they are arms of the State of Louisiana and, as such, the Eleventh Amendment deprives this Court of subject-matter jurisdiction over the claims against them. That is correct.

The Louisiana Judiciary Commission clearly enjoys Eleventh Amendment immunity. <u>Price v. Irons</u>, Civ. Action No. 19-11451, 2020 WL 3051941, at *2-3 (E.D. La. June 8, 2020), <u>aff'd</u>, 832 F. App'x 904 (5th Cir. 2021), <u>cert. denied</u>, 142 S. Ct. 161 (2021). The same is true of the Louisiana Attorney Disciplinary Board and the Louisiana Office of Disciplinary Counsel. <u>Price v. Irons</u>, Civ. Action No. 19-11451, 2020 WL 3047447, at *2-3 (E.D. La. June 8, 2020), <u>aff'd</u>, 832 F. App'x 904 (5th Cir. 2021), <u>cert. denied</u>, 142 S. Ct. 161 (2021).[39]

---

[39] In his opposition to this motion, plaintiff objects that the motion addresses only the claims against the entities, without discussion of the claims against the individuals who serve those entities. He complains that he "made it clear that specific individuals were being sued, whom are a part of [those entities]." Rec. Doc. 81, p. 35. As explained *supra*, that was in fact far from clear. And, as also already noted, the summonses were issued only to the entities, **not** the individuals. Summonses have never been issued to, much less served upon, any individual "defendants" with respect to these entities, and, so, it is hardly surprising that they have neither joined the motion nor otherwise appeared.

As to the remaining defendant, i.e. the "Office of District Judges" of the Louisiana Twenty-Fourth Judicial District Court, it is unclear whether plaintiff is attempting to the sue the court itself or the merely judges of that court.  But, ultimately, it does not matter – either way, his claims cannot proceed.

If plaintiff is attempting to sue the Louisiana Twenty-Fourth Judicial District Court itself, the court is a state court and, as such, is protected by the Eleventh Amendment.  <u>Carlisle v. Normand</u>, Civ. Action No. 16-3767, 2017 WL 11661097, at *1 (E.D. La. Aug. 1, 2017).

If plaintiff is attempting to sue the judges who sit on that court, including but not limited to Judge Stephen C. Grefer (who was listed in the complaint with an asterisk), he fares no better.  Claims against the judges in their official capacities for monetary damages are barred by the Eleventh Amendment,[40] while all other claims against them are barred by their judicial immunity and the restrictions incorporated in § 1983, for the reasons explained *supra*.

### C.  Motion to Dismiss Filed by the City of Kenner and Mayor Ben Zahn

The City of Kenner argues:  "Patton's Complaint wholly fails to allege *any* facts of a policy or custom being promulgated by a City of Kenner policymaker that led to purported constitutional right violations to support the required elements of this claim."[41]  That is correct.

As explained *supra*, "[i]n order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted."  <u>Spiller v. City of Texas City, Police Department</u>, 130 F.3d 162, 167 (5th Cir. 1997).  Because plaintiff has

---

[40] In his response to the defendants' motions, plaintiff states that he "is only requesting Injunctive and Declaratory Relief," Rec. Doc. 81, p. 4, and so he is apparently disavowing any intention to seek monetary damages.  Nevertheless, if he is, monetary damages against the judges in their official capacities are barred by the Eleventh Amendment.

[41] Rec. Doc. 22-1, p. 5.

not identified such a policy or custom promulgated or adopted by the City of Kenner, much less alleged that the policy or custom was a "cause in fact" of the constitutional violations he allegedly suffered, he has not stated a claim against the city.

As to Mayor Ben Zahn, any official-capacity claim against Mayor Zahn is in reality a claim against the City of Kenner.  Because the City of Kenner was also separately named as a defendant herein, the claim against Mayor Zahn in his official capacity is duplicative of that claim and should be dismissed on that basis, as explained *supra*.

Any claim against Mayor Zahn in his individual capacity fares no better.  Because plaintiff has not alleged the personal involvement of Mayor Zahn with respect to the § 1983 claims, much less alleged any specific facts indicative of such personal involvement, no individual-capacity claim has been properly stated against Mayor Zahn.

### D.  Motion to Dismiss Filed by the Kenner Police Department, Chief Michael Glaser, Lieutenant Michael Cunningham, Detective Bryan S. Weiter, and Officer Joseph Scamardo

The Kenner Police Department argues that the claim against it must be dismissed because it is not a suable entity.  That is accurate.  "Under Louisiana law, a police department is not a legal entity or person capable of being sued."  Lemon v. Kenner Police Department, Civ. Action No. 16-6631, 2016 WL 3950771, at *5 (E.D. La. July 1, 2016), adopted, 2016 WL 3902596 (E.D. La. July 19, 2016); accord Harrison v. Jefferson Parish Correction Center, Civ. Action No. 14-2844, 2015 WL 5083787, at *8 (E.D. La. May 11, 2015) (noting that plaintiff's claims against the Kenner Police Department must be dismissed because "a police department is *not* a legal entity or person

capable of being sued"), <u>adopted as modified on other grounds</u>, 2015 WL 5083862 (E.D. La. Aug. 27, 2015).

The claims against Chief Glaser, Lieutenant Cunningham, Detective Weiter, and Officer Joseph Scamardo likewise fail. Again, for the reasons explained *supra*, to the extent that plaintiff is suing those defendants in their official-capacities, those claims are actually ones against the City of Kenner – and because the City of Kenner was separately named as a defendant herein, the official-capacity claims should be dismissed as duplicative. On the other hand, to the extent that he is suing those defendants in their individual capacities, he has not made the required **factual allegations** concerning their **personal** involvement in the purported violations or met his burden to overcome their invocation of qualified immunity.

### E.  Motion to Dismiss Filed by Former Westwego Mayor Joe Peoples, the City of Westwego, the Westwego Police Department, Chief of Police Donald J. Munch, Sr., and Officers Christopher Fisher, Cory Boudreaux, Eric Orlando, Randy Mason, Sam Norton, Angel Lopez, Blake Lawson, Owen Valence, and Joshua Brown

The City of Westwego argues: "Patton's Complaint fails to allege any basis for municipal liability. … Patton's Complaint wholly fails to allege *any* facts of a policy or custom being promulgated by a City of Westwego policymaker that led to purported constitutional right violations to support the required elements of this claim."[42]  That is correct.

Again, as explained *supra*, "[i]n order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted."

---

[42] Rec. Doc. 36-1, pp. 7-8.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997). Because plaintiff has not identified such a policy or custom promulgated or adopted by the City of Westwego, much less alleged that the policy or custom was a "cause in fact" of the constitutional violations he allegedly suffered, he has not stated a claim against the city.

As to the official-capacity claims against the former mayor, the police chief, and the officers, those, again, are in reality claims against the governmental entity they served, the City of Westwego. Because the City of Westwego was also separately named as a defendant herein, the official-capacity claims are duplicative of that claim and should be dismissed on that basis, as explained *supra*.

And, also again, any claims against those persons in their individual capacities fail because plaintiff has not made the required **factual allegations** concerning their **personal** involvement in the purported violations or met his burden to overcome their invocation of qualified immunity.

Lastly, as to the claims against the Westwego Police Department, the motion correctly notes that "[t]he Westwego Police Department is not a separate juridical entity from the City of Westwego and, therefore, is improperly named as a separate Defendant."[43] As explained *supra*, a Louisiana police department is not a legal entity or person capable of being sued under § 1983.

### F.  Motion to Dismiss Filed by John Courtney Wilson

Plaintiff has also sued John Courtney Wilson. As an initial matter, it must be noted that Wilson is a private attorney, and attorneys, whether privately retained or court-appointed, are not acting under color of state law (as required for § 1983 liability) when representing their clients. Ingram v. Mooney, 680 F. App'x 341, 342 (5th Cir. 2017) ("[P]rivate attorneys are not official

---

[43] Rec. Doc. 36, p. 1.

state actors and thus are generally not subject to suit under 42 U.S.C. § 1983."); Mills v. Criminal District Court # 3, 837 F.2d 677, 679 (5th Cir. 1988) ("[S]ection 1983 claims require that the conduct complained of be done under color of law, and private attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983."); see also Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996) (ineffective assistance of counsel claim was not cognizable in § 1983 lawsuit because retained counsel was not a state actor).

That said, the Court recognizes that claims alleging that an attorney engaged in a conspiracy with a state actor are cognizable in a § 1983 action.  Mills, 837 F.2d at 679; Brown v. Blaize, Civ. Action No. 08-3730, 2008 WL 3876573, at *2 n.2 (E.D. La. Aug. 20, 2008).  The Court also recognizes that plaintiff alleges the existence of a conspiracy in this case, stating that Wilson "conspired to violate plaintiff's right to a fair and impartial trial" and "engaged in a widespread conspiracy to cover up [his] misconduct and silence the plaintiff."[44]  However, those allegations are insufficient to state a claim for two reasons.

First, the claim against Wilson is actionable only if his co-conspirator was a state actor, and plaintiff has not alleged that to be the case.[45]

Second, in any event, "[m]erely characterizing [a defendant's] conduct as conspiratorial or unlawful does not set out allegations upon which relief can be granted."  Dinwiddie v. Brown, 230 F.2d 465, 469 (5th Cir. 1956); accord Montgomery v. Walton, 759 F. App'x 312, 314 (5th Cir. 2019) ("To establish a conspiracy claim under § 1983, the plaintiff must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that

---

[44] Rec. Doc. 1, p. 35.
[45] To the contrary, plaintiff appears to indicate that Wilson's co-conspirator was Martin E. Regan, Jr., another individual named as defendant in this action.  However, Regan, who died earlier this year, was not a state actor.  Like Wilson, Regan was a **private attorney**.

such an alleged deprivation actually occurred.  Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983. … [A plaintiff] must plead specific, nonconclusory facts that establish that there was an agreement among the defendants to violate his federal civil rights." (citations omitted)).

It is, in fact, that lack of factual specificity that Wilson argues as the basis for his motion. As has been repeatedly noted herein, plaintiff's entire complaint is sorely lacking specific factual allegations.  Rather, his complaint consists of nothing more than broad, factually unsupported contentions of wrongdoing.  But, as already explained *supra*, that will not suffice. Again:  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations, quotation marks, and brackets omitted).  "While legal conclusions can provide the framework of a complaint, **they must be supported by factual allegations**."  Id. at 679 (emphasis added).

Just as that pleading requirement has not been met with respect to the other defendants, it likewise has not been met with respect to Wilson.  Therefore, even if he had been acting under color of state law, which he was not, the claims against him still fail on that basis.

### G.  Motion to Dismiss Filed by Louisiana Twenty-Fourth Judicial District Court Judicial Administrator Renee Hatch Aguilar

In the complaint, plaintiff alleges that the Louisiana Twenty-Fourth Judicial District Court Judicial Administrator has

> engaged in both a pattern and conspiracy to establish a willful pattern of violating plaintiff's … constitutional rights to fair and impartial trials and due process in

Jefferson Parish, Louisiana, and that plaintiff … allege[s] that no truth and justice abides in the Jefferson Parish Courthouse.  But, that it has become a den of corruption where Jefferson Parish Citizens are framed or railroaded by willful acts of the judicial administrator, whose pattern of acts have racist origins and by the very people who swore to uphold the United States Constitution, Rule of Law and the Supremacy Clause.[46]

In her motion to dismiss, Judicial Administrator Aguilar correctly noted that, once again, plaintiff's allegations were wholly conclusory and entirely lacking in any supporting factual allegations.  That obviously is accurate.  Therefore, in his reply to that motion, plaintiff for the first time attempted restate his claim, alleging:

> The plaintiff will demonstrate that Ms. Aguilar knew or should have known that the wheel of allotment is being manipulated to divert cases to a specific judge or A.D.A. which deprives the plaintiffs of due process.  The A.D.A.s are either filing bills early or late, to ensure that a case is allotted to a specific judge.
> Ms. Aguilar, as the judicial administrator has a legal and moral duty to bring such actions to light and has failed to protect the constitutional rights of the citizens of Jefferson Parish.  Ms. Aguilar, as the Judicial Administrator, is obligated to oversee the Judicial Administration and to hold violators of state and federal law accountable.[47]

Even assuming that plaintiff's clarification of his claim in his response should be considered by the Court,[48] it still does not suffice to state a claim against Aguilar because plaintiff has not properly alleged an adequate connection (or link) between Aguilar, in her role as judicial administrator, and the purported misconduct he specifically alleges, i.e. assistant district attorneys improperly manipulating the case-allotment process.  And, in any event, as Aguilar notes in her

---

[46] Rec. Doc. 1, pp. 31-32.

[47] Rec. Doc. 81, pp. 31-32.

[48] The United States Fifth Circuit Court of Appeals has held that when a district court is considering a motion to dismiss in a case filed by a pro se plaintiff, the court must consider the "complaint under the less stringent standards applicable to *pro se* litigants." Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983).  In such cases, the district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." Id. Therefore, a pro se litigant's supplemental filings which embellish the original complaint's averments may appropriately be considered when ruling on a motion to dismiss. Id.

reply brief,[49] the court's judicial administrator exercises control over neither the assistant district attorneys nor the case allotment process. See Louisiana Rules for Proceedings in District Courts, Family, Courts, and Juvenile Courts, Rule 14(a) ("The **clerk of court** shall randomly allot all criminal cases, unless an exception is established by law or these Rules." (emphasis added)) and Appendix 14A (noting that in the Louisiana Twenty-Fourth Judicial District Court are "[a]lloted by **Clerk** by random drawing" and that "[a] representative of the **Clerk of Court** shall be present for every allotment" (emphasis added)).    Therefore, having no connection to the purported misconduct, Aguilar in her individual capacity simply is not a proper defendant with respect to the sole specific factual allegation made by plaintiff with respect to this claim.

And, moreover, even if she were, she has invoked her immunity.  For actions taken at the direction of the court's judges, she (like the judges who issued the directives) would be entitled to absolute immunity.  See, e.g., Cain v. City of New Orleans, 184 F. Supp. 3d 379, 391 (E.D. La. 2016) ("Because … [the court judicial administrator] acted according to procedures allegedly implemented by the judges and at the express direction of the judges, to assist them in carrying out their judicial functions, [he was] protected by absolute quasi-judicial immunity." (quotation marks and brackets omitted)).  And for actions taken without express direction from the court's judges, she has invoked her qualified immunity, which plaintiff has failed to overcome.

As to claims brought against Aguilar in her official capacity, any such claims for monetary damages are barred.  Because an official-capacity claim against Aguilar for monetary damages is actually a claim against the entity she serves, and because that entity is a state court, then such a claim is barred by the Eleventh Amendment.  See, e.g., LaFrance v. New Orleans City, Civ. Action

---

[49] Rec. Doc. 96, pp. 2-3.

No. 16-14439, 2017 WL 1050495, at *3 (E.D. La. Mar. 17, 2017) (finding that an official-capacity claim against the judicial administrator of the Orleans Parish Criminal District Court was barred by the Eleventh Amendment).[50]

Of course, the Eleventh Amendment does not bar claims brought against Aguilar in her official capacity for prospective injunctive relief.  See, e.g., Wallace v. Texas Tech University, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996) ("Suits against state officials in their official capacity are considered to be suits against the individual's office, and so are generally barred as suits against the state itself.  But claims for prospective injunctive relief brought against state officials in their official capacity are not suits against the state." (citation omitted)).  Nevertheless, such relief is still unavailable for another reason:  "Section 1983 precludes injunction actions against judicial officers acting in their judicial capacity."  Whole Woman's Health v. Jackson, 13 F.4th 434, 443-44 (5th Cir. 2021).  That prohibition covers not only such claims against the judges themselves, but also against their subordinates acting under the direction of the judges in their judicial capacities.  Id. at 444.  That would apply to their judicial administrator.

### H.  Motion to Dismiss Filed by the Parish of Jefferson

As the Parish of Jefferson notes in its motion, plaintiff's claims against the parish government appear to be connected to his allegations challenging the constitutionality of the conditions of confinement at the Jefferson Parish Correctional Center.  However, there are two problems.

---

[50] Again, as noted in *supra* note 40, plaintiff is apparently disavowing any intention to seek monetary damages. Nevertheless, in any event, they are barred against Aguilar in her official capacity by the Eleventh Amendment.

First, as previously explained, a local governmental entity (such a parish governing body) can be held liable in federal civil rights cases only when the alleged constitutional violations resulted from governmental **policies** and **customs**.  Here, again, plaintiff has not alleged that the purported constitutional violations in this case resulted from a governmental policy or custom, much less identified that policy or custom as required.

Second, even if he had, that policy or custom would not be attributable to the **Parish**, because the parish government does not run the jail or act as its policymaker.  The jail is operated by the Jefferson Parish **Sheriff**.  La. Rev. Stat. Ann. § 15:704 ("Each sheriff shall be the keeper of the public jail of his parish, and shall by all lawful means preserve the peace and apprehend all disturbers thereof, and other public offenders.").  The local parish government has no authority over the sheriff.  See Victoria W. v. Larpenter, 205 F. Supp. 2d 580, 586 n.16 (E.D. La. 2002) (noting that a parish sheriff is "an autonomous local government official separate and apart from the parish he serves"), aff'd, 369 F.3d 475 (5th Cir. 2004).  As a result, it is the sheriff, not the local parish government, who sets jail policy.  As United States District Judge Jane Triche Milazzo has explained:

> Sheriffs in Louisiana are final policy makers with respect to management of the jail.  This policy-making authority over management of the jail is not the result of a delegation from the Parish or any other local government entity, but rather, the Louisiana Constitution.  **The Parish has no authority to manage the Sheriff's employees and the Parish exercises no power or discretion in the functioning of the Sheriff's office or the jail.**  Indeed, the Parish is only responsible for the physical maintenance of the brick-and-mortar jail building and appointing a physician or contracting with a health care provider to tend to the medical needs of detainees.  As it relates to the Parish's authority to contract with a health care provider, the sole responsibility of the Parish shall be its contractual obligations with the health care provider.

Belcher v. Lopinto, 492 F. Supp. 3d 636, 649 (E.D. La. 2020) (emphasis added; footnotes, brackets, and ellipsis omitted).

Because plaintiff has not identified a single policy or custom a policy or custom promulgated or adopted by the Parish of Jefferson, much less alleged that the policy or custom was a "cause in fact" of the constitutional violations he allegedly suffered, he has not stated a claim against the Parish.

### I.  Motion to Dismiss Filed by Louisiana Twenty-Fourth Judicial District Defender Richard M. Tompson

As previously discussed, plaintiff sued a private attorney, John Courtney Wilson. However, he has also sued a public defender, Richard M. Tompson.  As Tompson accurately notes in his motion to dismiss,[51] he is entitled to dismissal for the same reasons as Wilson.

Specifically, to reiterate, "[s]ection 1983 creates a private right of action for redressing violations of federal law by those **acting under color of state law**." Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999) (emphasis added).  Just like a private attorney who represents a criminal defendant, "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk County v. Dodson, 454 U.S. 312, 325 (1981).

And, again, plaintiff's conclusory allegations of a conspiracy do not change the equation. It is, of course, true that public defenders can be held liable under § 1983 for alleged conspiratorial action with state officials.  Tower v. Glover, 467 U.S. 914, 923 (1984). But, again, plaintiff's

---

[51] In his motion, Tompson notes:  "Patton purported to serve the 'Indigent Defenders Board' through Tompson.  Out of an abundance of caution Tompson appears individually and in his official capacity.  There is no such entity as the 'Indigent Defenders Board.'"  Rec. Doc. 86-1, p. 1 n.1.

allegations of conspiracy are wholly conclusory, and it is clear that conclusory allegations of conspiracy fail to state a § 1983 cause of action.  Small v. Dallas County, Texas, 170 F. App'x 943, 944 (5th Cir. 2006); Russell v. Millsap, 781 F.2d 381, 383 (5th Cir. 1985); Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992); Buckenberger v. Reed, Civil Action No. 06-7393, 2007 WL 1486488, at *4 (E.D. La. May 18, 2007).

### IV.  Motions for Default

Lastly, the Court notes that plaintiff has filed two motions for default.  In the first, he asks that the Court enter defaults with respect to the Jefferson's Parish Sheriff's Office, the Jefferson Parish Correctional Center, the Internal Management Bureau, the New Orleans Justice Center, Martin Regan, Jr., the Jefferson Parish Indigent Defender's Board, and Clerk of Court Jon Gegenheimer.[52]  In the second, he asks that the Court enter defaults with respect Price Quenin, Martin Regan, Jr., Cynthia Lee-Sheng, Lt. Jason Hippler, and Keith Lobrono.[53]  The Jefferson Parish Correctional Center and Lee-Sheng have filed memoranda in opposition.[54]

As a preliminary matter, it must be noted that summonses were never issued for, much less served upon, Price Quenin, Cynthia Lee-Sheng, Lt. Jason Hippler, and Keith Lobrono.  Obviously, a defendant who was never served cannot be in default.  See, e.g., Maryland State Firemen's Ass'n v. Chaves, 166 F.R.D. 353, 354 (D. Md. 1996) ("It is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or a default judgment may be entered against a defendant.").

---

[52] Rec. Doc. 79.
[53] Rec. Doc. 105.
[54] Rec. Docs. 80 and 109.

Moreover, in any event, because plaintiff is an inmate, his civil action is subject to the Prison Litigation Reform Act of 1995 ("PLRA"). "[U]nlike in the typical civil case, **defendants do not have to respond to a complaint covered by the PLRA until required to do so by the court**, and waiving the right to reply does not constitute an admission of the allegations in the complaint." Jones v. Bock, 549 U.S. 199, 213-14 (2007) (emphasis added); 42 U.S.C. § 1997e(g)(1). In the instant case, because the Court has never entered an order directing any of the defendants herein to respond to the complaint, they cannot be in default. See, e.g., McCurdy v. Johnson, No. 2:08-cv-01767, 2012 WL 3135906, at *1-2 (D. Nev. Aug. 1, 2012); accord Williams v. Kelly, Civ. Action No. 17-12993, 2018 WL 4403381, at *4 (E.D. La. Aug. 27, 2018), adopted, 2018 WL 4386178 (E.D. La. Sept. 14, 2018), aff'd, 818 F. App'x 353 (5th Cir. 2020), cert. denied, 141 S. Ct. 678 (2020).

Accordingly, plaintiff's motions for entry if default should be **DENIED**.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's request to prosecute this matter as a class action be **DENIED**.

It is **FURTHER RECOMMENDED** that all of plaintiff's claims brought pursuant to 42 U.S.C. § 1985 against all defendants be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A.

It is **FURTHER RECOMMENDED** that all of plaintiff's claims brought pursuant to 31 U.S.C. §§ 3729-3733 against all defendants be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A.

It is **FURTHER RECOMMENDED** that the motion to dismiss filed by the Jefferson Parish District Attorney's Office, District Attorney Paul D. Connick, Jr., Assistant District Attorneys Jennifer Rosenbach, Laura Schneidau, and Zachary Popovich, and Victims Assistance Program Coordinator Melanie Villemarette, Rec. Doc. 18, be **GRANTED** and that plaintiff's claims brought pursuant to 42 U.S.C. § 1983 against those defendants be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that the motion to dismiss filed by the Louisiana Judiciary Commission, the Louisiana Attorney Disciplinary Board, the Louisiana Office of Disciplinary Counsel, and the "Office of District Judges" of the Louisiana Twenty-Fourth Judicial District Court, Rec. Doc. 20, be **GRANTED** and that plaintiff's claims brought pursuant to 42 U.S.C. § 1983 against those defendants be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction pursuant to the Eleventh Amendment.

It is **FURTHER RECOMMENDED** that the motion to dismiss filed by the City of Kenner and Mayor Ben Zahn, Rec. Doc. 22, be **GRANTED** and that plaintiff's claims brought pursuant to 42 U.S.C. § 1983 against those defendants be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that the motion to dismiss filed by the Kenner Police Department, Chief Michael Glaser, Lieutenant Michael Cunningham, Detective Bryan S. Weiter, and Officer Joseph Scamardo, Rec. Doc. 23, be **GRANTED** and that plaintiff's claims brought pursuant to 42 U.S.C. § 1983 against those defendants be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that the motion to dismiss filed by former Westwego Mayor Joe Peoples, the City of Westwego, the Westwego Police Department, Chief of Police Donald J. Munch, Sr., and Officers Christopher Fisher, Cory Boudreaux, Eric Orlando, Randy

Mason, Sam Norton, Angel Lopez, Blake Lawson, Owen Valence, and Joshua Brown, Rec. Doc. 36, be **GRANTED** and that plaintiff's claims brought pursuant to 42 U.S.C. § 1983 against those defendants be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that the motion to dismiss filed by John Courtney Wilson, Rec. Doc. 60, be **GRANTED** and that plaintiff's claims brought pursuant to 42 U.S.C. § 1983 against Wilson be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that the motion to dismiss filed by Louisiana Twenty-Fourth Judicial District Court Judicial Administrator Renee Hatch Aguilar, Rec. Doc. 71, be **GRANTED**.  It is **FURTHER RECOMMENDED** that the claims brought pursuant to 42 U.S.C. § 1983 against her in her individual capacity be **DISMISSED WITH PREJUDICE**, the claims brought pursuant to 42 U.S.C. § 1983 against her in her official-capacity for monetary damages be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction pursuant to the Eleventh Amendment, and the claims brought pursuant to 42 U.S.C. § 1983 against her in her official capacity for prospective injunctive relief be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that the motion to dismiss filed by the Parish of Jefferson, Rec. Doc. 72, be **GRANTED** and that plaintiff's claims brought pursuant to 42 U.S.C. § 1983 against that defendant be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that the motion to dismiss filed by Louisiana Twenty Forth Judicial District Defender Richard M. Tompson, Rec. Doc. 86, be **GRANTED** and that plaintiff's claims brought pursuant to 42 U.S.C. § 1983 against Tompson be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that plaintiff's motions for default, Rec. Docs. 79 and 105, be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __27th__ day of June, 2022.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**